People v Cole (2018 NY Slip Op 04391)





People v Cole


2018 NY Slip Op 04391


Decided on June 14, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 14, 2018

107740

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
TERRANCE COLE, Appellant.

Calendar Date: April 23, 2018

Before: McCarthy, J.P., Egan Jr., Aarons, Rumsey and

 Pritzker, JJ.

Matthew C. Hug, Albany, for appellant.
P. David Soares, District Attorney, Albany (Michael C. Wetmore of counsel), for respondent.


Rumsey, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered April 15, 2015, upon a verdict convicting defendant of the crime of burglary in the second degree (four counts).
Defendant was charged by indictment with four counts of burglary in the second degree in connection with four home invasions that occurred in the City of Albany between March 4, 2014 and April 2, 2014. Following a Mapp hearing, County Court suppressed evidence of a hammer that was seized from defendant's residence, concluding that the hammer was outside the scope of the warrant that authorized the search and, further, that seizure of the hammer was not justified by the plain view doctrine.
Approximately one month later, the People moved to reargue, contending that the court erred with respect to its application of the plain view doctrine. County Court granted the motion and, upon reargument, reversed its initial suppression decision, finding that the hammer was admissible. Following a jury trial, defendant was convicted as charged and was sentenced, as a persistent violent felony offender, to concurrent prison terms of 20 years to life for each conviction. Defendant appeals.
Defendant argues that the People's motion to reargue should have been denied because it was untimely and, further, on the basis that the plain view doctrine was not raised at the Mapp hearing. Initially, defendant failed to establish that the motion was untimely because the record [*2]does not contain evidence that the initial order suppressing the evidence was served with notice of entry [FN1]. Defendant's argument that the motion should not have been granted because the plain view doctrine was not considered on the original motion is similarly unavailing. A motion to reargue may be based upon matters of law allegedly misapprehended in determining the prior motion (see CPLR 2221 [d] [2]). In its initial order, County Court noted that seizure of the hammer was outside the scope of the warrant because the hammer was not among the items listed in the warrant, and the court considered whether there was evidence to support a claim that seizure of the hammer was justified by the plain view doctrine. The People moved to reargue on the basis that County Court misapprehended the plain view doctrine by relying upon case law that had been expressly overruled by the Supreme Court of the United States. Thus, County Court properly granted the motion to reargue.
On reargument, County Court properly concluded that the hammer was admissible under the plain view doctrine. "[L]aw enforcement officers may properly seize an item in 'plain view' without a warrant if (i) they are lawfully in a position to observe the item; (ii) they have lawful access to the item itself when they seize it; and (iii) the incriminating character of the item is immediately apparent" (People v Brown, 96 NY2d 80, 89 [2001]). All three elements were satisfied here. The hammer was found upon a search of defendant's home that was conducted pursuant to a valid warrant that authorized search of the entire premises for items stolen in the various burglaries. As noted by County Court, the nature of the items listed in the warrant — which included small items such as jewelry — justified a search of the contents of the premises, including containers. Thus, the police officers who conducted the search were lawfully in position to observe the hammer and had lawful access to it when they seized it. Further, the incriminating character of the hammer was immediately apparent based on the fact that forcible entry was made to each of the four homes that were burglarized.
Defendant also contends that County Court improperly denied his motion to preclude identification evidence given by Dora Febus because he was never provided with notice pursuant to CPL 710.30. We agree. CPL 710.30 (1) (b) provides, in relevant part, that within 15 days of arraignment, the People must serve upon the defendant notice of their intent to offer at trial "testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him or her or a pictorial, photographic, electronic, filmed or video recorded reproduction of him or her as such."[FN2] "Not only is the statutory mandate plain[,] but the procedure is simple. The People serve their notice upon [the] defendant, the defendant has an opportunity to move to suppress and the court may hold a Wade hearing. If the People fail to provide notice, the prosecution may be precluded from introducing such evidence [*3]at trial" (People v Pacquette, 25 NY3d 575, 579 [2015] [internal quotation marks, ellipsis and citations omitted]). The purposes of the notice requirement are to allow for preparation of a defense and to permit orderly resolution of the admissibility of the identification testimony prior to trial (see id.).
During her direct examination, Febus testified that approximately one week prior to the burglary, she answered a ringing doorbell to find a stranger who asked for a person who was unknown to her. The individual left before she could respond to his inquiry. She described the individual as an older black man with long hair who was carrying a satchel. Approximately 10 days after the burglary, Febus went to the police station and identified various objects that had been taken from her residence. While she was at the police station, she asked a police officer about the identity of the individual who had broken into her residence, and the officer provided defendant's name. She then asked the officer if she could see a picture of the individual, and the officer responded that it "was online on the Albany Police Department's [Facebook page]." Febus testified that she returned home and accessed the Facebook page. Over defendant's objection, County Court permitted Febus to continue her testimony regarding her prior identification of defendant. In that regard, she testified that when she accessed the police department's Facebook page, she saw a number of mugshots and immediately identified defendant as the person who had knocked on her door approximately one week prior to the burglary.
We are not presented with the issue of whether maintenance by a police department of a Facebook page or website with mugshot photos of arrested individuals — or referral of individuals to such a website — are, without more, police-initiated identification procedures because, in this case, the police officer also provided Febus with defendant's name when he told her that she could view a picture of the person who had been arrested for burglarizing her home on the police department's Facebook page. The fact that she had been provided with defendant's name could have influenced her identification of defendant when she subsequently viewed the Facebook page. This, in our view, was sufficient police involvement to invoke the notice requirement of CPL 710.30 (1) (see e.g. People v Marshall, 26 NY3d 495, 505-506 [2015]; People v Clay, 147 AD3d 1499, 1501 [2017], lv denied 29 NY3d 1030 [2017]; People v Friday, 114 AD2d 970, 971 [1985]). Inasmuch as notice was not provided, County Court erred in permitting Febus to identify defendant as the person who came to her home prior to the burglary. However, the error was harmless because Febus' identification of defendant was not necessary to his conviction in light of the other significant evidence linking him to the four burglaries and associated thefts, including his sale of items that had been stolen and recovery of other items upon a lawful search of his home (see People v Pacquette, 25 NY3d at 580).
Defendant next contends that County Court erred when it gave the jury a recent, exclusive possession charge with respect to counts 1, 2 and 3 of the indictment because he was not found in possession of the stolen items until several weeks after these three burglaries occurred [FN3]. "Recent, unexplained, exclusive possession of the fruits of a burglary may raise an [*4]inference of guilt sufficient to support a conviction of burglary" (People v Measheaw, 108 AD2d 952, 953 [1985] [citations omitted]; see People v Baskerville, 60 NY2d 374, 382 [1983]). The recent, exclusive possession charge, however, "must be tailored to the facts of the particular case" (People v Baskerville, 60 NY2d at 382), because "[t]here are no precise definitions of what constitutes recent and exclusive possession" (People v Schillaci, 68 AD2d 124, 126 [1979]). In that regard, although there is no bright-line rule as to when the recent, exclusive possession charge is improper, a one-week period is not so long a period as to be improper as a matter of law (see People v Combo, 275 AD2d at 937), and "the longer the period between the larceny and the discovery of [the] defendant's possession of the fruits of the crime, the stronger the circumstantial evidence must be before the inference of guilt may be drawn" (People v Schillaci, 68 AD2d at 126).
Here, there was sufficient circumstantial evidence to permit the recent, exclusive possession charge to be given on all four counts of the indictment. Notably, items stolen from each of the four locations and the hammer, which could have been used to facilitate the forced entries, were found together upon a search of defendant's residence, and defendant sold items stolen during three of the burglaries to pawnshops. The burglaries all occurred in close proximity to each other — and to defendant's residence — within less than one month. Further, the burglaries were all conducted in a similar fashion; in each case, access was gained by forcing open a door and the interior of the residence was ransacked in a search for items that could be easily transported and sold.
Defendant contends that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence. "When considering a challenge to the legal sufficiency of the evidence, we view the evidence in the light most favorable to the People and evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Robinson, 156 AD3d 1123, 1124 [2017] [internal quotation marks and citations omitted], lv denied 30 NY3d 1119 [2018]). "A weight of the evidence review requires this Court to first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Perry, 154 AD3d 1168, 1169 [2017] [internal quotation marks, ellipsis, brackets and citations omitted]).
As relevant here, a person commits burglary in the second degree when "he [or she] knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when . . . the building is a dwelling" (Penal Law § 140.25 [2]). We must determine only whether there was legally sufficient evidence connecting defendant to each of the four burglaries because all of the other elements were established by undisputed evidence establishing that personal property was stolen from each dwelling that had been forcibly entered without consent. As previously explained, recent and exclusive possession of the fruits of a burglary may raise an inference sufficient to support a conviction of burglary (see People v Measheaw, 108 AD2d at 953). The evidence was legally sufficient to support defendant's convictions based on the inference of guilt that arose from his possession of property that was stolen during the burglaries, including his sale of stolen property to two different pawnshops.
Turning to consideration of the weight of the evidence, a different verdict would not have been unreasonable in light of defendant's testimony that he did not commit the burglaries, but came into possession of the victims' property, which he claimed he did not know was stolen, [*5]when he received it as payment upon the sale of illicit drugs. However, when we view the evidence in a neutral light and give deference to the jury's credibility determinations, we find that the convictions were not against the weight of the evidence in light of defendant's possession of property stolen during the burglaries and his sale of some of those items to pawnshops.
Finally, we are unpersuaded by defendant's argument that his sentence was harsh and excessive. We find no abuse of discretion by County Court or extraordinary circumstances that would warrant a reduction of his sentence, which falls within the permissible statutory range (see People v Lord, 159 AD3d 1283, 1284 [2018]).
McCarthy, J.P., Egan Jr., Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: A motion to reargue must "be made within [30] days after service of a copy of the order determining the prior motion and written notice of its entry" (CPLR 2221 [d] [3]). Although the motion was made more than 30 days after the date of County Court's initial order, the lack of evidence regarding service of that order precludes a determination of whether the time to move to reargue had expired.

Footnote 2: The amendment of CPL 710.30 (1) (b) that was effective on July 1, 2017 (see L 2017, ch 59, part VVV, § 6) does not change our analysis.

Footnote 3: Defendant was found in possession of items stolen during the fourth burglary two days after it occurred and did not object to the charge being given with respect to count 4. His further contention that County Court should have charged the jury that it could also infer that he was merely the knowing possessor of the stolen property is unpreserved for review (see People v Combo, 275 AD2d 936, 937 [2000], lv denied 95 NY2d 933 [2000]).