People v Davis (2019 NY Slip Op 05943)





People v Davis


2019 NY Slip Op 05943


Decided on July 31, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 31, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, CURRAN, AND WINSLOW, JJ.


748 KA 15-00946

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JEREMY M. DAVIS, DEFENDANT-APPELLANT. 






TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (JANET C. SOMES OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (SCOTT MYLES OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Monroe County (Alex R. Renzi, J.), rendered July 30, 2014. The appeal was held by this Court by order entered March 23, 2018, decision was reserved and the matter was remitted to Supreme Court, Monroe County, for further proceedings (159 AD3d 1531 [4th Dept 2018]). The proceedings were held and completed. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]) and criminal possession of a weapon in the third degree (§ 265.02 [3]) arising from an incident in which a police officer and his partner approached and eventually searched a parked vehicle that was occupied by defendant, his codefendant, and two other people. When this appeal was previously before us, we concluded that Supreme Court erred in summarily denying defendant's motion to preclude the identification testimony of the officer and his partner in the absence of notice pursuant to CPL 710.30 (1) (b) (People v Davis, 159 AD3d 1531 [4th Dept 2018]). We held this case, reserved decision, and remitted the matter to Supreme Court "for a hearing to determine whether the officer and his partner engaged in identification procedures at the police station within the purview of CPL 710.30 and, if so, whether such identifications were merely confirmatory" (id. at 1534). Following the hearing on remittal, the court determined that the identifications of defendant at the police station by the officer and the partner were confirmatory.
We reject defendant's contention that the court erred in determining that the officer's identification of him at the police station was confirmatory. "Case-by-case analyses of the facts and circumstances . . . remain necessary" (People v Mato, 83 NY2d 406, 411 [1994]) and "[c]omprehensive analysis, not superficial categorization, ultimately governs" whether a police identification is confirmatory (People v Gordon, 76 NY2d 595, 601 [1990]; see People v Boyer, 6 NY3d 427, 433 [2006]). Here, the officer's hearing testimony established that defendant was present at a residence at which the officer had assisted in performing a probation check of another individual two weeks prior to the subject incident. While he was in the residence, the officer spent approximately 20 to 25 minutes within an arm's length of defendant, conversed with defendant during that period of time, and had no other tasks to perform during the probation check that would have drawn his attention away from defendant. Thereafter, during the subject incident, the officer approached the driver's side of the vehicle and, upon leaning down to look into the vehicle, immediately recognized the front seat passenger as defendant based on their interaction at the residence two weeks earlier. The officer mentioned to defendant that they had just talked and, in response, defendant agreed and confirmed that he knew the officer. The officer was approximately six feet away from defendant, and the street lights provided sufficient light for the officer to see the faces of the occupants of the vehicle. When, in contravention of the officer's request, defendant kept moving his hands down from the dashboard, the officer began to walk around the front of the vehicle to continue his conversation with defendant. The [*2]officer could still see defendant's face at that time. Defendant then exited the vehicle, fled through nearby yards, and was unsuccessfully pursued by the officer. The officer directed a third officer to take defendant into custody at the residence at which the probation check had been performed.
The court credited the testimony of the officer and, contrary to defendant's contention, " [t]here is no basis for disturbing the . . . court's credibility determinations, which are supported by the record' " (People v Vernon, 164 AD3d 1657, 1658 [4th Dept 2018], lv denied 32 NY3d 1179 [2019]; see People v Brown, 123 AD3d 938, 939 [2d Dept 2014], lv denied 25 NY3d 949 [2015]). Given the quality of the officer's viewing of defendant during the subject incident—as evinced by the officer's immediate recognition of the front seat passenger as defendant based on their prior face-to-face interaction and defendant's confirmation thereof and by the favorable viewing conditions, which included good lighting and close range—we conclude that the viewing "constitute[s] an observation of . . . defendant . . . so clear that the identification [at the police station] could not be mistaken' thereby obviating the risk of undue suggestiveness" (People v Pacquette, 25 NY3d 575, 580 [2015]; see People v Turner, 233 AD2d 932, 933 [4th Dept 1996], lv denied 89 NY2d 1102 [1997]; cf. Boyer, 6 NY3d at 432-433; People v Newball, 76 NY2d 587, 591-592 [1990]; see generally People v Wharton, 74 NY2d 921, 922-923 [1989]). Inasmuch as the officer's identification of defendant at the police station was merely confirmatory, defendant was not entitled to CPL 710.30 notice with respect to that identification and the court did not err in refusing to preclude the identification testimony of the officer (see Boyer, 6 NY3d at 432; Wharton, 74 NY2d at 922-923). We note that the totality of the interactions particular to the officer and defendant here differentiates this case from that of the codefendant, i.e., the left rear seat passenger, in which the officer's initial viewing of the codefendant arose solely from the officer standing by the vehicle for approximately three minutes while engaged with all of the occupants (cf. People v Clay, 147 AD3d 1499, 1501 [4th Dept 2017], lv denied 29 NY3d 1030 [2017]).
We agree with defendant that the court erred in refusing to preclude the identification testimony of the partner based on the People's failure to provide a CPL 710.30 notice. Unlike the officer, the partner had only brief and fleeting, low-quality viewings of defendant that are insufficient to establish that, "as a matter of law, the identification at issue could not be the product of undue suggestiveness" (Boyer, 6 NY3d at 431; see Pacquette, 25 NY3d at 580; Clay, 147 AD3d at 1500-1501). Nevertheless, we conclude that the error is harmless (see Pacquette, 25 NY3d at 580). "Even in the absence of [the partner's] identification testimony, the evidence at trial overwhelmingly established that defendant was the [occupant of the front passenger seat under which a defaced handgun was discovered]" (id.). The officer—who was experienced, had prior familiarity with defendant, immediately recognized the front seat passenger as defendant, and was able to observe defendant at close range—"unequivocally identified defendant" at trial as the front seat passenger (id.). In addition, "defendant's flight from police officers evinced a consciousness of guilt" (id.), and the third officer's testimony that defendant had fresh scratches on his wrists when he took defendant into custody shortly thereafter is consistent with defendant having fled through nearby yards.
Entered: July 31, 2019
Mark W. Bennett
Clerk of the Court